Good morning. May it please the Court, Mr. Hurley. My name is Jeffrey Nunnery. I'm here on behalf of the appellant, Raudell Rodriguez-Gonzales. Since we were last on the Court's docket, Mr. Hurley and I had ample opportunity to argue this case amongst ourselves, but we still haven't reached an agreement, so we decided we'd better come inside and let you take a shot at it. The issue presented in this case is whether the District Court's failure to advise Mr. Rodriguez-Gonzales of the mandatory deportation consequences attendant to his conviction rendered his plea invalid in that it was not knowingly, intelligently, and voluntarily entered. We have argued that the United States Supreme Court's decision in Padilla v. Kentucky has altered the landscape as far as what constitutes a penalty with regard to immigration law under Rule 11. And Mr. Hurley did cite additional authority yesterday indicating that Rule 11 has been modified and will go into effect on December the 1st, basically saying District Courts, you need to advise non-citizen defendants of the deportation consequences attendant to their pleas. So they're kind of helping me out here a little bit, but the rule is not yet in effect, so we're still operating under Rule 11 as it existed at the time that Mr. Rodriguez-Gonzales entered his plea. And my argument is that under the Supreme Court's rationale in Padilla, that the deportation consequences, it's clear now under that language that those are, in fact, penalties, and that non-citizen defendants should be advised of those consequences at the time of their plea. The whole, you know, Padilla was already decided when he was sentenced, and where does counsel fit into all of this? I mean, is there, what's the answer to the question of did his attorney tell him this? We don't know. There were, well, there were a number of trial counsel appointed for this defense. Yeah, he was going through attorneys pretty rapidly. Yeah, he was attorney shopping. That happens a lot. And acted as his own counsel to an extent. There were two motions, as I recall, filed by two different counsel seeking the withdrawal of the plea. And then Mr. Rodriguez-Gonzales himself tendered, I think, one that was actually styled as a formal motion, and one was pretty much just a letter to the judge saying, hey, look, I would like to withdraw my plea. And there were various reasons listed. In one of the handwritten motions, I think he attached like a research page that kind of summarized little points of law that he rendered in support. But we'd never, he never got a hearing on any of these motions. And so therefore, the record is not as well developed as perhaps it could have been. Apart from his scribbling, what other reason was offered by an attorney? Why did he want to withdraw his plea? There were various reasons offered. There were some co-defendants who were also involved. And there was a quantity of drugs that was ascribed to, my clock's not working, by the way. I don't know if anyone catches it. I'm still on 10. I got 10 more minutes. I don't have that much to say. So I think a couple of other people went to trial, and the problems with respect to the drug quantities kind of became apparent. And I think Mr. Rodriguez-Gonzalez kind of took that into consideration when fashioning his motions. But we don't know. One of the reasons offered, as I recall, in each of the motions, some of the motions set forth other possible grounds for relief. But no one raised this argument. And I raised it after I received the case. I looked at Padilla. What can we do for Mr. Rodriguez-Gonzalez? All I know is he's really desirous of getting the plea vacated. And so whether it's a wise choice or not, given everything, only he can make that final decision. And here I am. So our position is that Padilla has changed the landscape and has made it pretty clear that deportation is a penalty. And if it's a penalty, then Rule 11 requires that that be explained to a defendant before taking his or her plea. But there's a sort of an assumption there that the responsibilities of the court and supports that on the thing. Current case law does not. We're arguing for an extension of the rule of Padilla. And we're kind of out there on that one. Well, you are. And it's sort of, as you pointed out, sort of academic that now Rule 11 is going to be changed. But I don't necessarily attach the same significance that you would argue that. Because sometimes you just do prudent things to keep us, anytime we can eliminate an issue coming before the court, we're going to do it. Correct. Of course, you know, I mean, the timing is right, given the defendant population in the federal courts. And the need to give that sort of advice occurs with much more frequency. So there's been a heightened awareness. And probably Padilla heightened the awareness even more. I think so. And I have to admit, I didn't fully read the committee comments and everything attached to the rule. Well, I haven't read them either. That was a surmise. And I'm just wondering if Padilla I've got the comments here. And it's it does reference the comment. Commentary does reference Padilla. Okay. Yeah, I think it's kind of a natural path for it to take given, given the language in Padilla. And I don't know, I would like to think that was somewhat prescient. But I've learned over the years, I've never really had an original thought. So this was probably in the works at the time that I was preparing my commentary, though, makes clear that there's no indication that Padilla compels this change in the rule. Correct. It's just against that background, maybe it's a good idea to eliminate future problems. Right. And I made the argument in the brief that, you know, there's practical reasons for adopting such a rule, because, you know, it only takes an allegation of ineffective or inadequate advice to establish the first prong of the IAC test. And, you know, if you if you put the burden on the district courts, to advise a defendant situated similarly situated to Mr. Rodriguez-Gonzalez, then you're doing a lot to clear the deck, so to speak, of these, a great number of potential habeas petitions that could be filed on the basis of someone saying, hey, he never told me that I could be deported. And then you get into the big litigation of the, you know, the second prong of the IAC test. And, you know, that's where most of the appeals come here on that rule. You know, and again, you know, the rule has been changed. It's going to be effective soon. And the question is, is this case a proper one to consider those changes and how they apply? I don't think that the rule as amended was absolutely necessary, because it's our position that it's a penalty anyway. And so rule 11 requires you to explain a maximum penalty or a mandatory minimum. And we've argued in our brief that deportation is at least a mandatory minimum penalty, if not a mandatory minimum. So I think it was already covered under rule 11. The question is, are we going to read Padilla that broadly? And we're asking that you do. The panel has no more questions, so turn it over to Mr. Hurley. Good morning, Your Honors. May I please court? My name is Dan Hurley, and I represent the United States. Obviously, we disagree. The reason for the amendment is the fact that the current version of Padilla is a discussion of immigration consequences. But I think this court can avoid that thorny issue of when the amendment takes effect and whether it's retroactive and things of that sort. Because Mr. Nunnery explained, there's no law at this point. He cannot point to a single case that compels the result. And that means there's no plain error. There's no error. It's certainly not plain if there's not a case that makes it clear. And Padilla is not such a case because Padilla is all about the effective assistance of counsel and says nothing about the obligation of the district court. It wasn't construing rule 11. And so there's no law in his favor at this point. Therefore, there's no error that is plain. In addition, even if you were to overcome that hurdle, the Dominguez-Benitez case makes clear that a defendant in this position has to make a showing of a reasonable probability that but for the error, he would not have entered this guilty plea. This defendant has not even made that allegation. If you do not allege that you would not have entered the guilty plea, you can't possibly make an adequate showing under the Dominguez-Benitez case. Not only has he not made that allegation, he can't make that allegation. This is a defendant who's already been deported. He was deported in 1979 after his first drug trafficking conviction. That's in the pre-sentence report at the time. And so this defendant hasn't made the allegation. He can't make the allegation. And so he can't possibly show an effect on his substantial rights. And so irrespective of the Padilla issue, irrespective of the rule 11 issue, this defendant simply can't make the showing he needs to under Dominguez-Benitez. Unless the court has any further questions, we're prepared to rest on our briefs. Thank you. Well, we don't know what the district court judge in the prior case told Mr. Rodriguez-Gonzalez. Maybe he said something similar to what the sentencing judge in this case said. At the sentencing transcript. Mr. Hurley's point was, it seems to me, at least in part, was that the deportation itself would have advised him that that was a consequence. Of course, he probably would have been deported if ascertained to be in the country, whether he had the criminal offense or not, but . . . I think we have to make a number of assumptions to say that, yes, that's absolutely correct. I mean, he was not entirely fluent in English, although his written filings seem to suggest that he could read and write and understand the English language. But Judge Carr told Mr. Rodriguez-Gonzalez in this case, at the time of sentencing, and I'm looking at the sentencing transcript at page ID 5382, where he's pronouncing his sentence in open court. And the last thing that he advises him is, in addition to the other conditions, you will be prohibited during the term of supervised release from ever returning to this country. That's not quite right. Mr. Hurley points out that it's automatic. It's self-executing. You've done it once and you're convicted again, you're going to get it again. Well, what if he was told the same thing before? You know? So I don't know. What do we do with that? So I don't think it's as clear-cut and dry as Mr. Hurley would make it out. We don't know what happened. We know what happened here, and we know what didn't happen here. And we're asking that the Court adopt the argument that Padilla clearly states that there's no court of appeals that's bought that argument to date, is there? I don't know. I haven't looked recently. There's at least one that has rejected it. But not you. Yeah. And I'm in front of you. And it makes good sense. And it should be the law of this circuit. And that's what we're asking. Thank you. Thank you both for your argument. We'll consider the case carefully. Mr. Nunnery, thanks for accepting this appointment under the Criminal Justice Act. We appreciate your doing that, and we appreciate your advocacy on behalf of Mr. Rodriguez-Gonzalez.